**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

LUIS LLUBERES; ERIC GILLETTE,

                                   Plaintiffs,

          v.

CITY OF TROY; TROY POLICE DEPARTMENT;
HARRY TUTUNJIAN, Mayor of the City of Troy, in his
official and individual capacities; JOHN TEDESCO, in his
official and individual capacities; OFFICER BRANDON
CIPPERLY, in his official and individual capacities;
OFFICER CHARLES CASTLE, in his official and
individual capacities; OFFICER WILLIAM FITCH, in his
official and individual capacities; OFFICER ASHE, in his
official and individual capacities; OFFICER J. McNALL,
in his official and individual capacities; OFFICER
CHRISTOPHER PARKER, in his official and individual
capacities; OFFICER CHARLES ROCKWELL, in his
official and individual capacities; OFFICER THOMAS
HOFFMAN, in his official and individual capacities;
OFFICER ANDERSON, in his official and individual
capacities; OFFICER NEGRON EVANGELISTA, in his
official and individual capacities; OFFICER DAVID DEAN,
in his official and individual capacities; OFFICER
CARELLO SALVATORE, in his official and individual
capacities; JEFFREY PIRRO, City of Troy Public
Information Officer, in his official and individual capacities;
CHARLES SARRIS, in his official and individual capacities;
JOHN DOE and JANE DOE, representing any other
members of the Troy Police Department involved by act
or omission in the incidents giving rise to this action,

                                   Defendants.

No. 11-CV-1346
(CFH)

_____

**APPEARANCES:**

MANN LAW FIRM, PC
Attorneys for Plaintiffs
Post Office Box 143
Latham, New York 12110

**OF COUNSEL:**

MATTHEW J. MANN, ESQ.

DREYER, BOYAJIAN LAW FIRM                    JOHN B. CASEY, ESQ.
Attorneys for Defendants
75 Columbia Street
Albany, New York 12210


**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### MEMORANDUM-DECISION AND ORDER[1]

Plaintiffs Luis Lluberes ("Lluberes") and Eric Gillette ("Gillette") bring this action pursuant

to 42 U.S.C. § 1983 alleging that defendants, the City of Troy, Troy Police Department

("Troy PD"), ten Troy PD officers, two public information officers of Troy, and John and Jane

Does, violated his constitutional rights under the First, Fourth, and Fourteenth

Amendments.[2]  Compl. (Dkt. No. 1).  Plaintiffs also assert pendent state law claims.  Id.

Presently pending are defendants' and plaintiffs' motions for summary judgment pursuant to

_____

[1]  In accordance with the provisions of 28 U.S.C. §636(c) and Fed. R. Civ. P. 73, the parties in this action consented to have the undersigned conduct any and all proceedings in this case.  Dkt. No. 38.

[2]  By stipulation filed February 7, 2014, the parties agreed that all claims against defendants Mayor Tutunjian, David Dean, Salvatore Carello, and Evangelista Negron in their individual capacities be withdrawn.  Dkt. No. 59 at 1.  Further, these four defendants are not amenable to suit in their official capacities "because claims against a government employee in his official capacity are treated as a claim against the municipality, . . . and "[defendants are] considered an arm of the City, and therefore cannot be sued in that capacity."  Hines v. City of Albany, 542 F. Supp. 2d 218, 227 (N.D.N.Y. 2008) (internal quotation marks and citations omitted).  Accordingly, any and all claims against Mayor Tutunjian, David Dean, Salvatore Carello, and Evangelista Negron are dismissed pursuant to such.
    The parties also stipulated to withdraw Counts 11, 12, and 13 of the complaint.  Dkt. No. 59 at 3.  Counts 11–13 concern the Age Discrimination Act of 1975, 42 U.S.C. § 6101 et seq., New York Executive Law § 296, and New York Civil Rights Law § 40(c).  Compl. at 25–30.  The parties further agreed for plaintiffs to amend certain facts in their complaint, which have been incorporated therein in this Memorandum-Decision and Order.  Dkt. No. 59 at 2.

Fed. R. Civ. P. 56. Dkt. Nos. 60, 62. Both parties filed responses and replies. Dkt. Nos. 66, 68, 72, 74. For the following reasons, defendants' motion is granted in part and denied in part and plaintiffs' motion is denied.


## I. Background

At all relevant times, the allegations and events occurred in Troy, New York.


### A. Lluberes

On August 29, 2010, just after midnight, Lluberes, a Rensselaer Polytechnic Institute ("RPI") engineering student, left a party on Thirteenth Street with a gathering of people to attend another party on Fifteenth Street. Compl. ¶ 25; Lluberes Dep. (Dkt. No. 60-3 at 137–235) at 141, 151–56. Prior to leaving the Thirteenth Street party, Lluberes had consumed a drink containing four to five shots of Vodka and a cup of beer and was intoxicated. Lluberes Dep. at 151–57.

On Fifteenth Street, Lluberes entered a house located between Sage Avenue and Peoples Avenue. Lluberes Dep. at 159–60. Inside the house, Lluberes engaged in a physical confrontation with a RPI hockey player. Id. at 25–27. A group of RPI hockey players escorted Lluberes out of the house and to the sidewalk. Id. at 164–66. Lluberes became upset and testified that someone pushed him twice from behind as he walked away from the house. Id. at 166–67, 169–74. Lluberes next recalls being handcuffed in the middle of Fifteenth Street. Id. at 174–75. Lluberes does not recall how he became face-down on the street. Id. at 182.

Lluberes alleges that when he was pushed into the street, defendants and Troy PD Police Officers Anderson, Ashe, Charles Castle ("Castle"), Brandon Cipperly ("Cipperly"), William Fitch ("Fitch"), and J. McNall ("McNall") accosted and arrested him. Compl. ¶¶ 7–9, 11–12, 16, 26, 30; Lluberes Dep. at 168. Lluberes denies having been told to disperse. Compl. ¶¶ 27, 49; Lluberes Dep. at 3. During the arrest, Lluberes was thrown to the ground, beaten by the officers with hands, batons, and booted feet, and charged with resisting arrest pursuant to New York Penal Law § 205.30, harassment in the second degree pursuant to New York Penal Law § 240.26(1), and disorderly conduct pursuant to New York Penal Law § 240.20(6). Compl. ¶¶ 29, 52; Dkt. No. 1-3 (arrest record dated 08/29/10); Dkt. No. 178 (certificate of disposition).

Specifically, Lluberes testified that when he was lying on the ground, an officer kneed him in the back while he was struggling to bring his arms behind him. Lluberes Dep. at 177. Lluberes recalls yelling for help when he was being handcuffed and was told to keep quiet. Id. at 177–78. Lluberes recalls receiving three strikes to the head with a baton even though he was already handcuffed. Id. at 179. After being hit in the head, Lluberes felt blood coming down his face and into his mouth. Id. at 181. Lluberes received an appearance ticket that night. Id. at 198; Dkt. No. at 60-6 at 183 (appearance ticket).

Photographs of Lluberes taken at the police station show cuts on the back of the head, right knee, and left elbow and blood dried all over the face and head. Dkt. No. 68-11 at 2–6. A video recording of the incident shows the tail-end of an arrest where an individual is lying on the ground with the hands behind the back. Dkt. No. 68-10 at 150. Although unclear, it appears a police officer is kneeling on the individual on the ground. Id. At the end of the video, an officer approaches and asks the person filming the incident to disperse. Id.

4

Sarah Weisberg ("Weisberg"), a RPI student and an acquaintance of Lluberes, saw Lluberes on the porch of a fraternity house when she heard a commotion. Weisberg Aff. (Dkt. No. 68-9 at 110–13) ¶¶ 2, 5–6. Weisberg saw Lluberes moving away from the commotion with his hands in the air. Id. ¶ 6. Four officers arrived at the scene. Id. ¶ 7. A "large and stocky" officer came up from behind Lluberes and placed his hand on Lluberes's right shoulder. Id. ¶ 9. Lluberes shrugged off the officer's hand. Id. ¶ 10. Weisberg attested that Lluberes never shoved an officer. Id. ¶ 11. Weisberg then witnessed three male officers beating Lluberes and heard Lluberes cry for help. Id. ¶ 14. Weisberg heard Lluberes state that he could not put his hands behind his back because he was being kneed in the spine. Id. Weisberg saw the stocky officer strike Lluberes three times in the back of the head while Lluberes was on the ground. Id. ¶ 15. Weisberg attested that Lluberes did not resist arrest. Id. ¶ 16.

Defendants proffer a different account of the August 29, 2010 incident. After midnight on August 29, 2010, Cipperly, Fitch, Castle, and Ashe arrived at Fifteenth Street on a "park, walk, and talk" overtime detail to patrol for rowdy RPI students. Ashe Dep. (Dkt. No. 60-5 at 61–116) at 71; Castle Dep. (Dkt. No. 60-4 at 115–66) at 129; Cipperly Dep. (Dkt. No. 60-4 at 167–232) at 180–81; Fitch Dep. (Dkt. No. 60-5 at 2–59) at 12–13; Hoffman Dep. (Dkt. No. 60-6 at 2–31) at 15. The officers were in the RPI area due to several citizen complaints about noise volume and RPI students leaving debris in the road or destroying property. Castle Dep. at 129; Cipperly Dep. at 181. The officers observed a large crowd on the sidewalk and proceeded to disperse it. Ashe Dep. at 72; Castle Dep. at 129; Cipperly Dep. at 174, 185; Fitch Dep. at 14–15.

When Cipperly attempted to disperse the crowd, Lluberes approached him, screaming

obscenities. Cipperly Dep. at 185. Fitch witnessed Lluberes running towards and grabbing Cipperly. Fitch Dep. at 16, 18. Cipperly informed Lluberes to leave or Lluberes would be arrested; however, Lluberes refused to leave. Cipperly Dep. at 185. Cipperly told Lluberes that he was under arrest. Id. Lluberes pushed Cipperly in the chest with two hands. Ashe Dep. at 75; Castle Dep. at 130, 136; Cipperly Dep. at 185; Fitch Dep. at 20; Dkt. Nos. 60-6 at 193 (Castle Report), at 195 (Fitch Report), at 199 (Cipperly Control/Restraint Report). Cipperly then struck Lluberes three times in the leg with his baton as Lluberes stood punching and kicking. Cipperly Dep. at 190; Cipperly Control/Restraint Report. Fitch grabbed Lluberes from behind because Lluberes refused to put his hands behind his back. Fitch Dep. at 26. Lluberes swung his arms at the officers, refused to go down, and pulled the officers into the street. Id. at 28–29.

Ashe, Fitch, and Cipperly took Lluberes to the ground in the street. Ashe Dep. at 78; Fitch Dep. at 29. Ashe had grabbed Lluberes by the waist and pushed him over her right leg. Ashe Dep. at 78. Once he was on the ground, Lluberes continued to push himself off the ground, kicking and swinging at the officers. Fitch Dep. at 30. While on the ground, Lluberes grabbed at Cipperly's baton and refused to put his hands behind his back. Ashe Dep. 86–87; Fitch Dep. at 30–31; Hoffman Dep. at 13–14; Fitch Report; Cipperly Control/Restraint Report. This led Ashe to knee Lluberes in the left side four times. Ashe Dep. at 81. Fitch kneed Lluberes twice. Fitch Dep. at 34–41; Fitch Report. Cipperly testified that during the struggle, he attempted to strike Lluberes in the shoulder but because Lluberes moved, he struck Lluberes in the head. Cipperly Dep. at 191, 194; Cipperly Control/Restraint Report. Altogether, Cipperly hit Lluberes three times in the legs, twice in the shoulders, and once on the head. Cipperly Dep. at 194.

6

McNall drove to the scene and observed Cipperly lying on top of Lluberes on the streets. McNall Dep. (Dkt. No. 60-5 at 118–69) at 135–38. McNall approached and struck Lluberes in the right knee with his baton because Lluberes refused to comply with orders to put his hands behind his back and resisted arrest. McNall Dep. at 140–42; Dkt. No. 60-6 at 191 (McNall Report).

Castle was speaking to two students when he saw Lluberes pushing Cipperly with both hands. Castle Dep. at 130, 136. By the time Castle arrived at the incident, Lluberes was already handcuffed. Id. at 136. Castle did not witness the arrest because a crowd of people was in his line of vision. Id. at 139.

On May 8, 2011, at approximately 4:00 a.m., Lluberes was arrested by Troy PD and charged with two counts of disorderly conduct of making unreasonable noise pursuant to New York Penal Law § 240.20(2) and refusing to move pursuant to New York Penal Law § 240.20(6). Compl. ¶¶ 33, 60; Lluberes Dep. at 69, 77; see also Dkt. No. 1-4 (arrest record dated 05/08/11); Dkt. No. 179 (certificate of disposition). Lluberes alleges that defendant Anderson was involved in that incident. Compl. ¶¶ 17–18, 61. Lluberes testified that he was intoxicated and walking home with a group of people. Lluberes Dep. at 207.

Tedesco and Sergeant Thomas Hoffman testified that, based on their review, the use of force in the August 29, 2010 arrest was reasonable and justified. Tedesco Dep. (Dkt. No. 60-6 at 32–84) at 45, 48, 50–51, 69; Hoffman Dep. at 22. When Hoffman arrived at Fifteenth Street, Lluberes was in custody in the back of a patrol car. Hoffman Dep. at 9–10.

On February 7, 2011, the Troy City Court dismissed the disorderly conduct charge accrued from the August 29, 2010 arrest, finding the charge to be insufficiently pled on the face of the accusatory instrument. Dkt. No. 62-6 at 117.

7

On October 21, 2011, before the Troy City Court, Lluberes pled guilty to one count of New York Penal Law § 240.20(3) in full satisfaction of all pending charges from the August 29, 2010 and May 8, 2011 arrests. Dkt. No. 60-6 at 178–79 (certificate of disposition), 181 (plea sheet). One pending charge was pursuant to § 240.20(6), accrued on May 8, 2011. Dkt. No. 60-6 at 181. The terms of the plea included a waiver of appeal. Id.

On or about November 19, 2010, Lluberes served a notice of claim on the City of Troy. Compl. ¶ 44; Dkt. No. 1-1 (notice of claim). The notice of claim alleged that Lluberes suffered from a laceration to his head and scalp which required hospitalization and suturing as well as psychological and emotional distress. Dkt. No. 1-1.

### B. Gillette

On December 30, 2010, Gillette, an engineer, had returned home from work and consumed an estimate of three drinks of whiskey before walking to a bar. Gillette Dep. (Dkt. No. 60-3 at 2–84) at 6, 20–22; Gillette 50-h (Dkt. No. 60-3 at 86–134) at 106. Gillette testified that he probably also drank at the bar. Gillette Dep. at 23. After midnight, Gillette was intoxicated, left the bar stumbling with blurry vision, and was accosted by defendants and Troy PD Police Officers Anderson, Cipperly, Hoffman, Christopher Parker ("Parker"), and Charles Rockwell ("Rockwell"). Compl. ¶¶ 13–15, 34–35; Gillette Dep. at 26–27, 29–30; Gillette 50-h at 107–108.[3] Gillette and the officers exchanged words and Gillette remembers an officer stating, "you must feel pretty stupid now." Gillette Dep. at 28–29;

---

[3] An audio file of a radio call dated December 31, 2010, reveals that Gillette's name was mentioned. Dkt. No. 68-10. Although the audio is unclear, plaintiffs assert that the audio file shows a transmission stating, "highly intoxicated male stage 3 stage 4 sleeping on stoop" and "highly intoxicated male [inaudible] medical." Id.

Gillette 50-h at 114. Gillette recalls being turned around, shoved against a vehicle, thrown to the ground, and assaulted throughout the body with hands, batons, and booted feet. Compl. ¶¶ 73, 76; Gillette Dep. at 31, Gillette 50-h at 111–12, 123. Gillette does not recall who had hit him or being told that he was under arrest. Gillette Dep. at 32–33. Gillette testified that he recalls drafting a statement dated January 13, 2011, in which he wrote that he was sitting in a snowbank when officers helped him to his feet. Id. at 44; Dkt. No. 60-3 at 136 (Gillette statement). However, he did not remember anything else about that situation. Gillette Dep. 44. Gillette testified he would not be able to identify the officers who accosted him because he was intoxicated. Gillette 50-h at 109.

Gillette recalls being placed in the back of a police vehicle and held at a police station. Gillette Dep. at 33–34. The next morning, Gillette received a ticket to reappear and was released. Id. at 37–38. In short, Gillette had physical contact with the police officers but cannot proffer any specifics of the contact nor can he recall being arrested and processed at the police station. Id. at 32–36.

Defendants argue a different set of facts. Defendants contend that on December 30, 2010, at approximately 1:43 a.m., Cipperly called out through a radio transmission that Gillette was sleeping on a stairwell on Fourth Street. McNall Dep. (Dkt. No. 66-5 at 118–169) at 149; Rockwell Dep. (Dkt. No. 60-5 at 171–93) at 179. Gillette was highly intoxicated. Parker Dep. (Dkt. No. 60-5 at 194–217) at 204; Dkt. No. 60-6 at 162 (Arrest Report dated 12/30/10). McNall, Parker, and Rockwell responded to the scene. McNall Dep. at 149; Rockwell Dep. at 179. Gillette was screaming in the middle of the street in the presence of Cipperly and Parker. Cipperly Dep. (Dkt. No. 60-4 at 167–232) at 210; Dkt. No. 60-6 at 160 (Incident Report dated 12/30/10). Upon Gillette's refusal to Cipperly's repeated

9

orders to leave, Cipperly and Parker told Gillette that he was under arrest yet Gillette refused to place his hands behind his back. Incident Report dated 12/30/10.

Cipperly, McNall, Parker, and Rockwell attempted to place Gillette in custody but Gillette resisted. Dkt. No. 60-6 at 169 (Rockwell Report), 171 (McNall Report), 173 (Cipperly Report), 175 (Parker Control/Restraint Report); Rockwell Dep. at 181. Parker took Gillette to the ground and fought with Gillette to get the hands out from underneath the body. Parker Control/Restraint Report. Rockwell struck Gillette several times in the shoulder with his flashlight, two of which glanced off Gillette's shoulder and landed on the back of his head. Rockwell Dep. at 181–82; Rockwell Report. Cipperly struck Gillette in the upper right back with a baton because Gillette refused to comply with orders to stop resisting and put his hands behind his back. Cipperly Report. McNall put pressure on Gillette's foot to stop him from kicking and when Gillette continued, McNall struck Gillette twice in the buttocks with his baton and once in the right lower leg. McNall Dep. at 150–51; McNall Report. Force was used until Parker handcuffed Gillette. Cipperly Dep. at 214.

Gillette was charged with disorderly conduct in violation of Penal Law § 240.20(2) and resisting arrest in violation of Penal Law § 205.30, which were disposed by an adjournment in contemplation of dismissal ("ACD") in February 2011. Compl. ¶ 36; Gillette Dep. at 39, 55–56, 61–62; Arrest report dated 12/30/10; Dkt. No. 60-6 at 165 (criminal complaints sworn to 12/30/10). Gillette maintains that he is not the type of person who would behave in the manner as charged. Gillette Dep. at 59. As a result of the incident, Gillette contends that he suffered from injuries to the hands, fingers, face, left shoulder, back, and neck. Compl. ¶ 77; Gillette Dep. at 49–51, 53–55. Photographs taken of Gillette show a cut above the left eyebrow. Dkt. No. 60-6 at 163.

Gillette alleged that on or about March 25, 2011, he served a notice of claim on the City of Troy.  Compl. ¶ 45; Dkt. No. 62-5 at 44–45 (notice of claim).

### C.  New York Freedom of Information Law

On October 21, 2010, plaintiffs' counsel made requests for information pursuant to New York Freedom of Information Law ("FOIL").  Compl. ¶ 131; Dkt. No. 1-5 (FOIL Request).  On June 6, 2011, plaintiffs' counsel made another FOIL request.  Compl. ¶ 132; Dkt. No. 1-6 (FOIL Request to Pirro).

On August 25, 2011, defendant and Public Information Officer Jeffrey Pirro, denied such requests.  Compl. ¶¶ 20, 40, 134; Dkt. No. 1-7.  Pirro stated that the FOIL requests dated June 6, 2011 and August 22, 2011 were denied due to pending litigation.  Dkt. No. 1-7. Pirro was aware that a notice of claim was filed on behalf of Lluberes and believed it commenced a legal action.  Pirro Dep. (Dkt. No. 60-6 at 143–58) at 7.  On August 26, 2011, plaintiffs' counsel appealed the denial to defendant and Corporation Counsel Charles Sarris, Esq.  Compl. ¶ 135; Dkt. No. 1-8.  On September 2, 2011, Sarris granted in part and denied in part the appeal.  Compl. ¶¶ 21, 41, 136; Dkt. No. 1-9; Sarris Dep. (Dkt. No. 60-6 at 86–141) at 45.  Plaintiffs' counsel sought reconsideration on September 14, 2011, which Sarris denied on September 16, 2011.  Compl. ¶ 137; Dkt. Nos. 1-10, 1-11.

### D.  <u>Monell</u> Claim

Plaintiffs submit a letter dated January 27, 2005 from the Honorable Chief Judge Gary L. Sharpe to Chief Nicholas Kasier of Troy PD.  Dkt. No. 68-10 at 2–3.  The letter indicates that after a recent jury trial involving Troy PD, the jurors were upset that the Troy PD "did

not have a commitment to investigating citizen use of force complaints. . . . It was their distinct view . . . that there was no real effort by internal affairs to investigate those complaints." Dkt. No. 68-10 at 2.

By memorandum dated December 12, 2007, Tedesco wrote to then Troy Corporation Counsel David Mitchell, indicating that the Internal Affairs' investigation in the department was suspect. Dkt. No. 68-10 at 5. Tedesco asked Corporation Counsel to intervene and conduct a proper examination of a witness. Id.

Plaintiffs submit Troy PD's General Order No. 06.01 on the use of physical force. Dkt. No. 68-11 at 10–13. The policy states that "[p]olice officers may use only the level of physical force necessary in the performance of their duties . . . ." Further, police officers may use force "[t]o effect the lawful arrest of a person resisting arrest or attempting to flee from custody . . . [or i]n self-defense or in the defense of another person." Id. at 10.


### E. Claims

Lluberes challenges the constitutionality of § 240.20(6) and contends that the individual defendants violated his First Amendment right to assemble by enforcing the statute. Compl. ¶¶ 50, 61; Dkt. No. 59 at ¶ 2. Lluberes contends that the individual defendants violated his (1) Fourth Amendment rights by falsely arresting and imprisoning and using excessive force against him and (2) Fourteenth Amendment due process rights by enforcing Penal Law § 240.20(6) and failing to intervene the assaults against him.[4] Compl. ¶¶ 48, 50–51, 59, 65,

---

[4] "Due process of law is secured against invasion by the federal Government by the Fifth Amendment and is safeguarded against state action in identical words by the Fourteenth." Malloy v. Hogan, 378 U.S. 1, 26 (1964) (internal quotation marks and citation omitted). Since there are no federal defendants in this action, to the extent that plaintiffs

69, 96–97; Dkt. No. 59 ¶ 2. Gillette contends that the individual defendants violated his (1) Fourth Amendment rights by falsely arresting and imprisoning and using excessive force against him and (2) Fourteenth Amendment due process rights by failing to intervene the assaults against him. Compl. ¶¶ 72, 74, 82. Plaintiffs also contend that certain defendants violated their rights under NY FOIL. Compl. ¶¶ 43, 131–40.

Plaintiffs further assert <u>Monell</u> claims against defendants the City of Troy, Troy PD, and Tedesco based on Tedesco's failure to supervise, train, and discipline subordinates and deliberate indifference to the misconduct of subordinates. Compl. ¶¶ 79–80, 84–87, 90–93; Dkt. No. 59 ¶ 3. Specifically, plaintiffs contend that Tedesco either failed to institute written policies on issues such as the use of force or instituted such policies but was deliberately indifferent to their violations. Dkt. No. 59 ¶ 3. Plaintiffs also bring pendent state law claims of false arrests, assault and battery, and excessive force against the individual defendants and contend that the City of Troy, Troy PD, and Tedesco are liable for these claims based on a theory of respondeat superior. Compl. ¶¶ 138–39, 143–45, 148–49, 150, 153–55, 157, 159–60, 162, 164–65, 167–69, 171–73. Plaintiffs allege that due to defendants' actions, they sustained physical injuries, loss of income, and emotional distress. Compl. ¶¶ 88, 98, 102.[5]

---

raise due process claims under the Fifth Amendment, such claims will be addressed as raised under the Fourteenth Amendment.

[5] To the extent plaintiffs alleged Fourteenth Amendment equal protection claims in their complaint, such claims must be dismissed. The Fourteenth Amendment's Equal Protection Clause mandates equal treatment under the law. Essential to that protection is the guarantee that similarly situated persons be treated equally. <u>City of Cleburne, Tex. v. Cleburne Living Ctr.</u>, 473 U.S. 432, 439 (1985). Plaintiffs do not proffer any allegations, nor does the record reflect the contrary, indicating how they received unequal treatment as other similarly situated persons. Accordingly, plaintiffs have failed to allege any potential

Defendants asserted a counterclaim seeking reasonable attorney's fees if they become the prevailing party. Dkt. No. 4 ¶ 200.

## II. Discussion

Defendants move for summary judgment, arguing that: (1) the arrests of Lluberes and Gillette were grounded on probable cause; (2) defendants Anderson, Castle, Hoffman, and Tedesco were not personally involved in the alleged violations; (3) excessive force was not used against Lluberes and Gillette; (4) they are entitled to qualified immunity; (5) plaintiffs' <u>Monell</u> claims should be dismissed; (6) Lluberes lacks standing to challenge the

---

Fourteenth Amendment equal protection claims.
        Furthermore, in their complaint plaintiffs intimate a conspiracy claim against the defendants. Compl. ¶¶ 48, 59, 72, 74, 84–87, 90–93. In order to support a claim for conspiracy under §§ 1983 or 1985, there must be "(1) an agreement . . . ; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." <u>Ciambriello v. Cnty. of Nassau</u>, 292 F.3d 307, 324–25 (2d Cir. 2002); <u>Cusamano v. Sobek</u>, 604 F. Supp. 2d 416, 468 (N.D.N.Y. 2009). An agreement must be proven with specificity as bare allegations of a conspiracy supported only by allegations of conduct easily explained as individual action is insufficient. <u>See Iqbal v. Hasty</u>, 490 F.3d 143,177 (2d Cir. 2007); <u>see</u> <u>also</u> <u>Gyadu v. Hartford Ins. Co.</u>, 197 F.3d 590, 591 (2d Cir. 1999). Thus, plaintiffs must "make an effort to provide some details of time and place and the alleged effects of the conspiracy . . . [including] facts to demonstrate that the defendants entered into an agreement, express or tacit, to achieve the unlawful end." <u>Warren v. Fischl</u>, 33 F. Supp. 2d 171, 177 (E.D.N.Y. 1999) (citations omitted). While exact specifics are not required, "the pleadings must present facts tending to show agreement and concerted action." <u>Anilao v. Spota</u>, 774 F. Supp. 2d 457, 512–13 (E.D.N.Y. 2011) (citations omitted). Here, plaintiffs fail to provide evidence sufficient to support a viable conspiracy claim among the defendants. There is nothing in the record to establish that defendants had any type of agreement between them. There were no allegations outlining with specificity when, why, or how an alleged conspiracy occurred. <u>Warren</u>, 33 F. Supp. 2d at 177. Even though specifics are unnecessary, plaintiffs fail to provide any plausible information which would lend credence to a claim of an explicit or implicit agreement between any or all of the defendants. <u>Anilao</u>, 774 F. Supp. 2d at 512–13. Accordingly, plaintiffs have failed to allege any potential conspiracy claims in this action.

constitutionality of Penal Law § 240.20(6);[6] (7) there is no private cause of action under FOIL and defendants Pirro and Sarris cannot be held liable under FOIL; (8) the FOIL claim and the constitutional challenge to § 240.20(6) should be severed from the § 1983 claims; (9) the claims of Lluberes and Gillette should be severed or bifurcated into separate trials; and (10) John and Jane Doe defendants should be dismissed for failure to prosecute.

Plaintiffs argue for summary judgment on the following: (1) Penal Law § 240.20(6) is unconstitutional; (2) the City of Troy and other defendants are liable for enforcing Penal Law § 240.20(6); (3) defendants falsely arrested plaintiffs; (4) defendants violated their NY FOIL rights; and (5) defendants' counterclaim should be stricken as a sanction for violating a court order.

## A. Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Facts are material if they may affect the outcome of the case as determined by substantive law. Anderson v. Liberty Lobby, 477 U.S. 242, 248

---

[6] On January 4, 2012, plaintiffs advised the Office of the New York State Attorney General ("OAG") of their constitutional challenge to Penal Law § 240.20(6). Dkt. No. 7. By letter dated January 19, 2012, the OAG notified this Court that it will not participate in the action at this time. Dkt. No. 10. The OAG noted that it may defend the constitutionality of the statute at a later appellate stage. Id.

(1986). All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223–24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).


## B. Municipal Liability

This Court sua sponte addresses municipal liability and claims against defendants in their official capacities. See Hines v. City of Albany, 542 F. Supp. 2d 218, 227 (N.D.N.Y. 2008) (addressing such claims despite defendants' failure to do so).

Municipalities are considered "persons" who can be sued under § 1983. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978). "A police department is an administrative arm of the municipal corporation." Leland v. Moran, 100 F. Supp. 2d 140, 145–46 (2000) (citing Baker v. Willett, 42 F. Supp. 2d 192, 198 (N.D.N.Y. 1999). Further, "[a] police department cannot sue or be sued because it does not exist separate and apart from the municipality and does not have its own legal identity." Id. (citing inter alia East coast Novelty Co. v. City of New York, 781 F. Supp. 999, 1010 (S.D.N.Y. 1992)). Here, plaintiffs' claims against the City of Troy and the Troy PD are redundant. Because the Troy PD is an administrative arm of the City of Troy, the claims asserted against the Troy PD are dismissed. The real party in

interest here is the City of Troy. <u>Leland</u>, 100 F. Supp. 2d at 145–46. Moreover, plaintiffs are barred from suing the individual defendants in their official capacities. This is because "claims against a government employee in his official capacity are treated as a claim against the municipality." <u>Hines</u>, 542 F. Supp. 2d at 227 (citing <u>Hafer v. Melo</u>, 502 u.S. 21, 25 (1991)). Thus, all claims against the individual defendants in their official capacities are dismissed.

Accordingly, plaintiffs' claims against the Troy PD and individual defendants in their official capacities are dismissed from this action.

## C. Personal Involvement

Defendants argue that defendants Anderson, Castle, Hoffman, and Tedesco are not personally involved in the alleged constitutional violations.[7] "'[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" <u>Wright v. Smith</u>, 21 F.3d 496, 501 (2d Cir. 1994) (quoting <u>Moffitt v. Town of Brookfield</u>, 950 F.2d 880, 885 (2d Cir. 1991)). Thus, supervisory officials may not be held liable merely because they held a position of authority. <u>Id.</u>; <u>Black v. Coughlin</u>, 76 F.3d 72, 74 (2d Cir. 1996). However, supervisory personnel may be considered "personally involved" if:

> (1) [T]he defendant participated directly in the alleged constitutional violation;
>
> (2) the defendant, after being informed of the violation through a

---

[7] Defendants' motion for Mayor Tutunjian on this issue need not be reached because the parties stipulated to dismiss Mayor Tutunjian from this action. <u>See</u> note 2 <u>supra</u>.

report or appeal, failed to remedy the wrong;

(3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;

(4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or

(5) the defendant exhibited deliberate indifference to the rights of [plaintiffs] by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citing Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986)).[8]

### i. Anderson and Hoffman

Plaintiffs have failed to establish the personal involvement of either Anderson or Hoffman in the alleged violations of their rights under the Fourth and Fourteenth Amendments. First, plaintiffs believe that Anderson and Hoffman were present when they were assaulted during their respective arrests. However, it is undisputed that neither plaintiff could identify who was present at the scene because they were intoxicated. Contrary to plaintiffs' conclusory assertions, Hoffman attested that upon his arrival at the August 29, 2010 arrest, Lluberes was already handcuffed and taken into custody in the back

---

[8] Various courts in the Second Circuit have postulated how, if at all, the Iqbal decision affected the five Colon factors which were traditionally used to determine personal involvement. Pearce v. Estate of Longo, 766 F. Supp. 2d 367, 376 (N.D.N.Y. 2011), rev'd in part on other grounds sub nom., Pearce v. Labella, 473 F. App'x 16 (2d Cir. 2012) (recognizing that several district courts in the Second Circuit have debated Iqbal's impact on the five Colon factors); Kleehammer v. Monroe Cnty., 743 F. Supp. 2d 175 (W.D.N.Y. 2010) (holding that "[o]nly the first and part of the third Colon categories pass Iqbal's muster . . . ."); D'Olimpio v. Crisafi, 718 F. Supp. 2d 340, 347 (S.D.N.Y. 2010) (disagreeing that Iqbal eliminated Colon's personal involvement standard).

of a patrol vehicle.  Furthermore, defendants Ashe, Castle, Cipperly, and Fitch filled out multiple reports that do not mention Hoffman's involvement in the arrest.  Lluberes does not point to record evidence controverting Hoffman's testimony or the incident reports concerning Hoffman's involvement.  Gillette has proffered no proof to substantiate Hoffman's presence at his arrest.  Similarly, there is no record evidence to suggest that Anderson was present during any of the plaintiffs' arrests.  Anderson merely reviewed and signed the Gillette's arresting paperwork prepared by other officers.  Dkt. No. 60-6 at 162, 165, 167.

While "an arrestee's 'inability to positively identify those who allegedly violated his rights is not per se fatal to his claims" plaintiffs do not point to any record evidence establishing that either Anderson or Hoffman was at their arrest either before or during the time of the alleged use of excessive force.  De Michele v. City of New York, No. 09-CV-9334 (PGG), 2012 WL 4354763, at *16 (S.D.N.Y. Sept. 24, 2012) (citations omitted).[9]  Despite plaintiffs' speculative assertions, it is fair to conclude that a rational factfinder could not find their favor as the record is devoid of any evidence indicating that either Anderson or Hoffman was present at the arrests.  See, e.g., Coleman v. Hauck, No. 09-CV-1391 (GTS)(GHL), 2012 WL 4480684, at *9 (N.D.N.Y. Sept. 26, 2012) (granting summary judgment for certain defendants on personal involvement grounds where plaintiff argued that "[a]ll named Defendants responded to the scene where Plaintiff was repeatedly struck and kicked in the face" but failed to point to record evidence establishing that those defendants arrived at the scene before the use of force was applied).

---

[9]  All unpublished opinions cited to by the Court in this Memorandum-Decision and Order are, unless otherwise noted, attached to this Order.

Furthermore, plaintiffs failed to proffer any evidence showing that Anderson or Hoffman had "a realistic opportunity to intervene to prevent the harm from occurring." De Michele, 2012 WL 4354763, at *17 (citing inter alia Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994)) (internal quotation marks omitted). As plaintiffs do not provide an issue of material fact with respect to the presence of Anderson or Hoffman at the time of the alleged assaults, Lluberes cannot show that Anderson or Hoffman had directly participated in the assaults or failed to intervene in the misconduct. Moreover, plaintiffs do not allege that either defendant created a policy or custom under which unconstitutional practices occurred or was grossly negligent in their supervision. Colon, 58 F.3d at 873. To the extent plaintiffs allege that Anderson and Hoffman were personally involved in enforcing an unconstitutional statute, as discussed infra, the challenged statute is constitutional. Therefore, plaintiffs cannot establish the personal involvement of Anderson or Hoffman in the alleged unconstitutional actions.

Accordingly, defendants' motion on this ground is granted.

### ii. Castle

For largely the same reasons, Lluberes has failed to establish the personal involvement of Castle. Lluberes contends that Castle was present at the scene of arrest on August 29, 2010; hence, he must have been involved in the assault. However, Castle testified that he was speaking to two students when he saw Lluberes standing and pushing Cipperly with both hands. By the time Castle arrived at the incident, Lluberes was already handcuffed. Lluberes does not point to any evidence of record to the contrary or to support his allegations. As previously noted, a plaintiff's failure positively identify those who violated his

rights is not per se fatal to his claims. De Michele, 2012 WL 4354763, at *16. However, Lluberes does not point to any record evidence indicating that Castle made physical contact with him during the August 29, 2010 arrest. Coleman, 2012 WL 4480684, at *9. Castle did not witness the arrest nor did he have the opportunity to intervene on behalf of Lluberes. Thus, Lluberes cannot establish that Castle had directly participated in the alleged constitutional violation or was deliberately indifferent to his rights. Colon, 58 F.3d at 873. Further, Lluberes does not allege that Castle was informed of a violation through a report or appeal, created a policy under which unconstitutional practices occurred, or was grossly negligent in supervising any defendants. Id.

Accordingly, defendants' motion on this ground is granted.


### iii. Tedesco

In this case, plaintiffs assert a Monell claim against Tedesco based on the failure to supervise, train, and discipline subordinates who were involved in the arrests at issue. Plaintiffs also bring pendent state law claims of false arrests and assault and battery against Tedesco based on a theory of respondeat superior for subordinates' actions. It is clear that plaintiffs' claims against Tedesco involve Tedesco's direct participation or gross negligence in supervising subordinates who committed the wrongful acts. Colon, 58 F.3d at 873. Thus, Tedesco cannot be dismissed from this action based on his lack of personal involvement.

As such, defendants' motion on this ground is denied.

## D. New York Penal Law § 240.20(6)

Lluberes contends that Penal Law § 240.20(6) is unconstitutional, bringing both as-applied and facial challenges. In this case, the constitutional challenge is both unpreserved and substantively unpersuasive.

## 1. Waiver

"A defendant who pleads guilty unconditionally admits all elements of the formal charge and, in the absence of court-approved reservation of issues for appeal, waives all challenges to prosecution except those going to the court's jurisdiction." United States v. Seminerio, 680 F. Supp. 2d 523, 530 (S.D.N.Y. 2010) (citing United States v. Lasaga, 328 F.3d 61, 63 (2d Cir. 2003) (holding defendant's guilty plea waived a challenge to constitutionality of a pornography law on Commerce Clause grounds)). Constitutional challenges to a statute, like nonjurisdictional claims, may be waived. See United States v. Feliciano, 223 F.3d 102, 125 (2d Cir. 2000); see also Brady v. United States, 397 U.S. 742, 757–58 (1970) (finding guilty plea waived defendant's right to challenge constitutionality of federal kidnaping statute).

Here, Lluberes's constitutional challenge is unpreserved. Plaintiffs' counsel avers that he raised a constitutional challenge in an omnibus filing to the Troy Police Court, who declined to address that issue. Pls.' Reply (Dkt. No. 72) ¶ 8. First, there is no record evidence substantiating this contention. Second, the record is devoid of any court-approved reservation of issues for appeal. Seminerio, 680 F. Supp. 2d at 530. Third, Lluberes had waived his appeal rights when he pled guilty to § 240.20(3) which merged and dismissed

other counts, including a charge for violating § 240.20(6).  <u>United States v. Stearns</u>, 479

F.3d 175, 179 (2d Cir. 2007) (per curiam) ("By pleading guilty and waiving the right to

appeal this sentence, Stearns has waived the right to appeal [the variety of constitutional

challenges to the statute] which are fundamental to, and included in, his admission of guilt.

We, therefore, do not consider them here.").


### 2.  Void for Vagueness

Section 1 of the Fourteenth Amendment provides that "[n]o State shall . . . deprive any

person of life, liberty, or property, without due process of law."  U.S. CONST. amend. XIV, §

1.  "The vagueness doctrine is a component of the right to due process."  <u>Farrell</u>, 449 F.3d

at 485.  "[A] statute which either forbids or requires the doing of an act in terms so vague

that men of common intelligence must necessarily guess at its meaning and differ as to its

application violates the first essential of due process of law."  <u>Connally v. Gen. Constr. Co.</u>,

269 U.S. 385, 391 (1926) (citations omitted).  As the Supreme Court explained,

> [f]irst, . . . we insist that laws give the person of ordinary
> intelligence a reasonable opportunity to know what is prohibited,
> so that he may act accordingly.  Vague laws may trap the
> innocent by not providing fair warning.  Second, if arbitrary and
> discriminatory enforcement is to be prevented, laws must provide
> explicit standards for those who apply them.  A vague law
> impermissibly delegates basic policy matters to policemen,
> judges, and juries for resolution on an <u>ad</u> <u>hoc</u> and subjective
> basis, with the attendant dangers of arbitrary and discriminatory
> application.

<u>Grayned</u>, 408 U.S. at 108–09 (internal quotation marks, alterations, and citations omitted);

<u>see</u> <u>also</u> <u>Hill v. Colorado</u>, 530 U.S. 703, 732 (2000) ("A statute can be impermissibly vague

for either of two independent reasons.  First, if it fails to provide people of ordinary

intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement."). The Supreme Court further explicated that "where a vague statute abuts upon sensitive areas of basic First Amendment freedoms, it operates to inhibit the exercise of those freedoms." Grayned, 408 U.S. at 109 (internal quotation marks and citations omitted).

### i. As-Applied Challenge

In the context of a vagueness challenge as-applied to the plaintiff, a two-part test is conducted. United States v. Nadi, 996 F.2d 548, 550 (2d Cir. 1993). A court first determines "whether the statute gives the person of ordinary intelligence a reasonable opportunity to know what is prohibited. . . ." Id. at 550 (internal quotation marks, alterations and citations omitted). Second, the court considers "whether the law provides explicit standards for those who apply it." Id. Thus, plaintiffs must show that the penal statute either fails to provide them notice of what constitutes a violation or fails to provide sufficient guidance to those who enforce them. Dickerson v. Napolitano, 604 F.3d 732, 745 (2d Cir. 2010). The challenged statute states, "[a] person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof: . . . (6) He congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse." N.Y. PENAL LAW § 240.20(6). New York courts have construed "congregat[ing] with other persons" to mean a gathering of "at the very least three persons." United States v. Nelson, 500 F. App'x 90, 92 (2d Cir. 2012) (citing People v. Carcel, 3 N.Y.2d 327, 333 (1957)).

In this case, Lluberes's contention that § 240.20(6) is unconstitutional as applied to his

case is unavailing.  The standard for determining whether a statute provides adequate notice is an objective one and actual notice is not required.  <u>Dickerson</u>, 604 F.3d at 745–46 (citation omitted).  Plaintiffs argue that Penal Law § 240.20(6) is vague because it is unclear as to what constitutes a "lawful order," what congregations are to be dispersed, what constitutes dispersal, how long such dispersal must continue, and the distance the parties must disperse.  Pls.' Mem. of Law at 9.  It is undisputed that at least three RPI students were present on the sidewalk to satisfy the definition of a "congregat[ion]."  Furthermore, Lluberes's contentions do not explain how the § 240.20(6) would fail to notify a person of ordinary intelligence what conduct is prohibited or required.

"[P]erfect clarity and precise guidance have never been required even of regulations that restrict expressive activity."  <u>United States v. Williams</u>, 553 U.S. 285, 306 (2008).  Indeed, "[w]hat renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is."  <u>Id.</u>  A Kentucky disorderly conduct statute, which mirrors § 240.20(6), has been held to be not impermissibly vague.[10]  <u>Colten v. Kentucky</u>, 407 U.S. 104, 110 (1972).  The Supreme Court in that case concluded that any individual who is in a public place, is ordered to leave or disperse, and fails to do so, should understand that he could be convicted for disorderly conduct.  <u>Id.</u>  The Supreme Court continued,

---

[10]  The statute provides, "(1) A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: (f) Congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse . . . ."  <u>Colten v. Kentucky</u>, 407 U.S. 104, 108 (1972) (citing KY. REV. STAT. § 437.016(1)(f) (Supp. 1968)).

> [t]he root of the vagueness doctrine is a rough idea of fairness.
> It is not a principle designed to convert into a constitutional
> dilemma the practical difficulties in drawing criminal statutes both
> general enough to take into account a variety of human conduct
> and sufficiently specific to provide fair warning that certain kinds
> of conduct are prohibited.

Id. Lluberes does not provide any facts explaining how an individual of ordinary intelligence in a group of at least three people would not understand that he faces a potential conviction if he refuses a police officer's dispersal order. As such, Lluberes has failed to show how a person of ordinary intelligence lacks a reasonable opportunity to know what is prohibited. Nadi, 996 F.2d 548, 550. "[W]e can never expect mathematical certainty from our language." Grayned, 408 U.S. at 110.

The second prong has been said to be the more important aspect of the vagueness doctrine. Kolender v. Lawson, 461 U.S. 352, 358 (1983). "[A] court analyzing an as-applied vagueness challenge may determine that the statute generally provides sufficient guidance to eliminate the threat of arbitrary enforcement without analyzing more specifically whether the particular enforcement was guided by adequate standards." Farrell, 449 F.3d at 493 (emphasis added). If a statute fails to provide sufficient general guidance, an as-applied vagueness challenge may still fail "if the statute's meaning has a clear core," id. (citing Smith v. Goguen, 415 U.S. 566, 573, 577–78 (1974)), in which case, the inquiry becomes "whether the conduct at issue falls so squarely in the core of what is prohibited by the law that there is no substantial concern about arbitrary enforcement because no reasonable enforcing officer could doubt the law's application in the circumstances." Id. at 494.

Here, Lluberes has failed to allege sufficient facts establishing the second prong of the test. Lluberes contends that § 240.20(6) does not provide standards for how a police officer

26

should exercise his discretion in effectuating an arrest. Nevertheless, in the absence of

such standards, the meaning of § 240.20(6) has a clear core. Farrell, 449 F.3d at 493. The

Court of Appeals has reasoned,

> In People v. Munafo, 50 N.Y.2d 326 . . . this Court stated that
> "[d]isorderly conduct is a statutory creation. Intended to include
> in the main various forms of misconduct which at common law
> would often be prosecuted as public nuisances . . . . [A]
> common thread that ran through almost all of this legislation was
> a desire to deter breaches of the peace or, more specifically, of
> the community's safety, health or morals. . . . [T]his court has
> equated that term with "public inconvenience, annoyance or
> alarm," the governing phrase of our current disorderly conduct
> statute." Before that, we upheld the constitutionality of the
> predecessor, similarly worded disorderly conduct statute (People
> v. Feiner, 300 N.Y. 391 . . .).

People v. Tichenor, 89 N.Y.2d 606, 773–74 (1997). The refusal to disperse, with either

intent or recklessness to cause inconvenience, annoyance, or alarm, falls squarely within

the statute's prohibition of breaches of the peace; thus, it cannot be said that § 240.20(6)

encourages arbitrary enforcement. Farrell, 449 F.3d at 494. As such, Lluberes fails to meet

the second prong under Grayned.

Accordingly, defendants' motion on this is granted.


### ii. Facial Challenge

Facial vagueness challenges to statutes are generally disfavored. Dickerson, 604 F.3d

at 741 (citing inter alia, Farrell, 449 F.3d at 494 ("Federal courts as a general rule allow

litigants to assert only their own legal rights and interests, and not the legal rights and

interests of third parties.")). "When a regulation does not threaten the exercise of

fundamental rights, one whose conduct is clearly proscribed by the regulation cannot

successfully challenge it for vagueness." Farrell, 449 F.3d at 496 (internal quotation marks, alterations and citations omitted). To raise the rare and permissible facial challenge, First Amendment rights must be implicated. Dickerson, 604 F.3d at 742. Facial vagueness challenges move forward "only if the challenged regulation reaches a substantial amount of constitutionally protected conduct." Kolender, 461 U.S. at 358 n.8 (internal quotation marks and citations omitted). The inquiry becomes whether the penal statute "will have a substantial chilling effect on protected conduct." Farrell, 449 F.3d at 496 (citation omitted). Thus, whether plaintiffs can amount a facial vagueness challenge turns on whether their claim properly arises under the First Amendment.[11] Dickerson, 604 F.3d at 742.

The First Amendment declares, in part, that "Congress shall make no law . . . abridging the freedom of speech . . . or the right of people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. CONST. amend. I. The Supreme Court has held, "[t]he very idea of a government, republican in form, implies a right on the part of its citizens to meet peaceably for consultation in respect to public affairs and to petition for a redress of grievances." De Jonge v. State of Oregon, 299 U.S. 353, 364 (1937) (citing United States v. Cruikshank, 92 U.S. 542, 552 (1875)).

Although First Amendment protections are broad, they are not absolute. Jones v. Parmley, 465 F.3d 46, 56 (2d Cir. 2006) (citing Regan v. Boogertman, 984 F.2d 577, 579 (2d Cir. 1993)). The Supreme Court has also held that government officials may disperse a public demonstration where "clear and present danger of riot, disorder, interference with

_____

[11] The Second Circuit recognizes that courts generally only recognize standing for facial challenges brought under the First Amendment. Dickerson, 604 F.3d at 742 (citing Farrell, 449 F.3d at 495 n. 11). Claims brought outside the First Amendment confront a more restrictive standard. Id. at 743–45.

28

traffic upon the public streets, or other immediate threat to public safety, peace, or order, appears." Id. (citing Cantwell v. Connecticut, 310 U.S. 296, 308 (1940)).

In this case, Lluberes couched his facial vagueness challenge under the First Amendment. Lluberes alleges that the vagueness of § 240.20(6) violates his right to peaceable assembly. First, New York courts have also found § 240.20(6) to be constitutional on its face. People v. Tichenor, 89 N.Y.2d 769, 774 (1997) (citing inter alia People v. Todaro, 26 N.Y.2d 325, 329 (1970) (citations omitted)). Second, the statute on its face does not prohibit peaceable assembly; rather, it prohibits opposite conduct. This facial vagueness challenge is wholly baseless, failing to reach a substantial amount of constitutionally protected activity.[12] Kolender, 461 U.S. at 358 n. 8. Therefore, the facial vagueness challenge is dismissed in this action.

Accordingly, defendants' motion on this ground is granted.


### 3. Overbreadth

Overbreadth challenges are rooted in the First Amendment. Broadrick v. Okla., 413 U.S. 601, 611–12 (1973). They are all facial challenges "because an overbreadth challenge by its nature assumes that the measure is constitutional as applied to the party before the court." Farrell v. Burke, 449 F.3d 470, 498 (2d Cir. 2006). Third-party standing is permitted in overbreadth challenges "because of the potential deterrent effect of regulations on speech; [such challenges] allow[] those who have not been chilled to vindicate the First

---

[12] The Court notes that plaintiffs aver Lluberes was alone when he was leaving "a troubled scene" on August 29, 2010. Dkt. No. 62-2. This contradicts the claim that Lluberes was exercising his right to assemble at the time of arrest, and that such a right was violated when he was arrested.

Amendment interests of those who have."  <u>Dickerson v. Napolitano</u>, 604 F.3d 732, 749 (2d Cir. 2010) (internal quotation marks and citation omitted).  "A clear and precise enactment may nevertheless be overbroad if in its reach it prohibits constitutionally protected conduct."  <u>Grayned v. City of Rockford</u>, 408 U.S. 104, 114 (1972) (internal quotation marks and citations omitted).

A party may bring an overbreadth challenge if he "satisfies the [Article III] requirement of 'injury-in-fact' and [where] it can be expected satisfactorily to frame the issues in the case."  <u>Farrell</u>, 449 F.3d at 499 (citing <u>Sec'y of State of Md. v. Joseph H. Munson, Inc.</u>, 467 U.S. 947, 958 (1984)).  To prevail on this claim, "the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep."  <u>Broadrick</u>, 413 U.S. at 615.

In this case, Lluberes has failed to bring a First Amendment overbreadth challenge.  In their motion for summary judgment, aside from statements of law and legal conclusions, plaintiffs do not convey to the Court how the penal statute is overbroad.  Pls.' Mem. of Law at 10–11.  Plaintiffs do not revisit this claim in subsequent papers to the Court.  In fact, this overbreadth challenge appears to be a mere afterthought subsequent to the filing of the complaint as this claim was never alleged in the complaint.  In light of plaintiffs' failure to make factual allegations satisfying Article III's requirement of an injury-in-fact, plaintiffs cannot state a plausible overbreadth claim against defendants.  <u>Farrell</u>, 449 F.3d at 499.  Therefore, plaintiffs' motion on this ground is denied.

Given the number of reasons for dismissing Lluberes's constitutional challenge to § 240.02(6), any claims based on the defendants' enforcement of § 240.02(6) are also dismissed from this action.

## E.  False Arrest and Imprisonment

Under New York law, false arrest and false imprisonment claims are "synonymous." Posr v. Doherty, 944 F.2d 91, 96 (2d Cir. 1991).  Moreover, a false arrest claim under § 1983 has substantially the same elements of a false arrest claim under New York Law. Harris v. City of New York, No. 09-CV-3474 (KAM), 2013 WL 4858333, at *4 (E.D.N.Y. Sept. 10, 2013) (citing Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1980)).  A false arrest claim requires that a plaintiff show: (1) the defendant intended to confine him; (2) he was conscious of the confinement; (3) he did not consent to the confinement; and (4) the confinement was not otherwise privileged.  Bernard v. United States, 25 F.3d 98, 102 (2d Cir.1994).

"The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983."  Jenkins v. City of New York, 478 F.3d 76, 84 (2d Cir. 2007) (internal quotation marks and citation omitted).  Generally, a guilty plea is equivalent to a conviction, Saddler v. United States, 531 F.2d 83, 85 (2d Cir. 1976) (citation omitted), and does not change the application of the Heck rule, Magnotta v. Putnam Cnty. Sheriff, No. 13-CV-2732 (GBD/GWG), 2014 WL 705281, at *5 (S.D.N.Y. Feb. 24, 2014) (collecting cases).  "By pleading guilty . . . [a] plaintiff necessarily acknowlege[s] that he was engaged in some unlawful activity for which the police could properly take him into custody."  Harris, 2013 WL 4858333, at *4 (citation omitted).

### i. Lluberes

Under the "favorable termination" rule of <u>Heck v. Humphrey</u>, 512 U.S. 477, 487–88 (1994), if a determination favorable to the plaintiff in a § 1983 action "would necessarily imply the invalidity of his conviction or sentence," a plaintiff must prove that the conviction or sentence has been reversed on direct appeal or declared invalid in order to recover damages under § 1983. <u>Delaney v. City of Albany</u>, No. 12-CV-1575 (LEK/RFT), 2014 WL 701637, at *2 (N.D.N.Y. Feb. 24, 2014) (citing <u>Heck</u>, 512 U.S. at 483). This is so regardless of the relief sought. <u>Heck</u>, 512 U.S. at 483.

Here, Lluberes's false arrest and imprisonment claims, both state and federal, cannot withstand a motion for summary judgment. It is undisputed that Lluberes pled guilty to one count of disorderly conduct in full satisfaction of the charges that stemmed from arrests on August 29, 2010 and May 8, 2011. <u>Magnotta</u>, 2014 WL 705281, at *5. Lluberes cannot challenge the validity of his two arrests without vacation of his guilty plea. There is no evidence of record showing that Lluberes moved for such vacation or that his conviction was reversed. Lluberes's plea constitutes probable cause for his arrests. <u>Harris</u>, 2013 WL 4858333, at *4. Because probable cause existed, any claims for false arrest and imprisonment are meritless. <u>See</u> <u>Weyant v. Okst</u>, 101 F.3d 845, 852 (2d Cir. 1996) ("The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983." (quotation marks and citation omitted)); <u>Zanghi v. Inc. Vill. of Old Brookville</u>, 752 F.2d 42, 45 (2d Cir. 1985) ("It is abundantly clear that a finding of probable cause will defeat state tort claims for false arrest, false imprisonment and malicious prosecution."). Thus, we do not

reach the issues with respect to the other elements of these claims.  Lluberes is barred from bringing false arrest and imprisonment claims in this action.

Accordingly, defendants' motion on this ground is granted and plaintiffs' motion on this ground is denied.

### ii. Gillette

Defendants argue they had probable cause to arrest Gillette.  "Probable cause requires an officer to have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested."  Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006) (internal quotation marks and citations omitted).  Due to the fluidity of the concept, courts are instructed to consider the "totality of the circumstances" in making any probable cause determination.  Id. (citations omitted).  New York Penal Law § 240.20(2) provides, "[a] person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof . . . he makes unreasonable noise." Penal Law § 205.30 provides that "[a] person is guilty of resisting arrest when he intentionally prevents or attempts to prevent a police officer . . . from effecting an authorized arrest of himself or another person."

Here, factual issues exist as to whether Gillette's arrest was effectuated with probable cause.  Defendants posit that on the night of Gillette's arrest, Gillette was highly intoxicated, screaming in the street, and refused to leave.  Further, defendants argue that Gillette had resisted arrest after being told that he was under arrest.  To the contrary, although he does not recall the all details of his arrest, Gillette maintains that he did not commit the type of

conduct as defendants alleged on the night of his arrest. This competing evidence and disputes of facts are better resolved by a jury. In re Dana Corp., 574 F.3d 128, 152 (2d Cir. 2009). A reasonable fact finder could find the facts in Gillette's favor. Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223–24). Thus, defendants have failed to establish the absence of a dispute of fact with respect to the existence of probable cause for Gillette's arrest. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Accordingly, both defendants' and plaintiffs' motions on this issue are denied.


### F. Excessive Force

The Fourth Amendment prohibits a law enforcement officer from using excessive force during the course of effecting an arrest. Tracy v. Freshwater, 623 F.3d 90, 96 (2d Cir. 2010) (citing Graham v. Connor, 490 U.S. 386, 395 (1989)). However, in making an arrest, a law enforcement officer "necessarily carries . . . the right to use some degree of physical coercion or threat thereof to effect it." Graham, 490 U.S. at 396 (citing Terry v. Ohio, 392 U.S. 1, 22–27 (1968)). In determining whether an officer used excessive force in executing an arrest, the Court examines whether the force used is objectively unreasonable "in light of the facts and circumstances confronting [the officer], without regard to the officer['s] underlying intent or motivation." Jones v. Parmley, 465 F.3d 46, 61 (2d Cir. 2006) (quoting Graham, 490 U.S. at 397). This inquiry "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Graham, 490 U.S. at 396 (internal quotation marks and citations omitted).

To measure reasonableness, the Court "consider[s] the facts and circumstances of each particular case, including the crime committed, its severity, the threat of danger to the officer and society, and whether the suspect is resisting or attempting to evade arrest." Jones, 465 F.3d at 61 (quoting Thomas v. Roach, 165 F.3d 137, 143 (2d Cir. 1999)). Reasonableness is judged "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. (quoting Graham, 490 U.S. at 396) (internal quotation marks omitted). A successful excessive force claim under the Fourth Amendment requires the use of force that is serious or harmful, not merely de minimis. Drummond v. Castro, 522 F. Supp. 2d 667, 678–79 (S.D.N.Y. 2007). "[N]ot every push or shove" is unconstitutionally excessive. Maxwell v. City of New York, 380 F.2d 106, 108 (2d Cir. 2004) (internal quotation marks and citation omitted).

### i. Lluberes

Lluberes contends that on August 29, 2010, defendants Anderson, Ashe, Castle, Cipperly, Fitch, and McNall subjected him to excessive force in effectuating his arrest by beating him with hands, batons, and booted feet.[13] On the other hand, defendants contend that the force used was reasonable.

First, as discussed supra, Anderson and Castle were not personally involved in the arrest of and assault on Lluberes. Although Castle testified that he was in the vicinity of Lluberes's arrest, Lluberes cannot show that Castle was present at his arrest. The record is also devoid of any evidence to substantiate the allegation that Anderson was present at

---

[13] Lluberes does not contend that excessive force was used against him to effectuate his May 8, 2011 arrest.

Lluberes's arrest. Because no genuine issue of material fact exists with respect to these claims, Lluberes's excessive claims against Anderson and Castle must be dismissed. Anderson, 477 U.S. at 247–48.

Second, it is undisputed that on August 29, 2010, Lluberes was intoxicated and involved in a confrontation with certain RPI hockey players in the streets. However, Lluberes contends that he was pushed into the streets while attempting to leave the party when he encountered the defendant officers. Weisberg witnessed Lluberes moving away from the crowd with his hands in the air when an officer accosted Lluberes. Weisberg saw an officer came up from behind Lluberes and placed a hand on Lluberes's right shoulder. Lluberes reacted by shrugging off the hand. Weisberg attested that Lluberes never pushed or shoved any officer. Lluberes avers that he never reached out for an officer's baton. Lluberes Dep. at 183.

Lluberes contends that he did not resist arrest. Lluberes further avers that while he was lying with his face to the ground, he was struggling to bring his hands behind his back. Although he could not identify which defendant delivered which strike, Lluberes testified that he was thrown to the ground, kneed him in the back, and received three strikes to the head with a baton after he was handcuffed.

Record evidence shows that defendants Ashe, Cipperly, Fitch, and McNall made physical contact with Lluberes during the August 29, 2010 arrest. Ashe had grabbed Lluberes by the waist, pushed him over her leg, and kneed Lluberes four times. Cipperly had hit Lluberes three times in the leg. Cipperly also struck Lluberes several times on the shoulder, one of which had unintentionally contacted Lluberes's head. Fitch kneed Lluberes twice. Lastly, McNall had observed Cipperly lying on top of Lluberes then approached and

struck Lluberes in the right knee with his baton, contending that Lluberes was resisting arrest.

This competing evidence rests on the credibility of Lluberes and Weisberg on one hand and defendants' on the other. Crediting Lluberes and Weisberg's account of the events, the alleged strikes carried out by Ashe, Cipperly, Fitch, and McNall would be objectively unreasonable and disproportional to the circumstances confronting those officers. <u>Jones</u>, 465 F.3d at 61. As such, a rational factfinder could find in favor of Lluberes. <u>Gallo</u>, 22 F.3d at 1223–24. Therefore, the excessive force claims against Ashe, Cipperly, Fitch, and McNall remain in this action.

Accordingly, defendants' motion on this ground is granted for claims against Anderson and Castle and denied for claims against Ashe, Cipperly, Fitch, and McNall.


### ii. Gillette

Gillette contends that defendants Anderson, Cipperly, Hoffman, McNall, Parker, and Rockwell subjected him to excessive force in effectuating his arrest by beating him with hands, batons, and booted feet. On the other hand, defendants contend that the force used was reasonable.

First, as discussed <u>supra</u>, Anderson and Hoffman were not personally involved in the arrest of and assault on Gillette. The record is also devoid of any evidence to substantiate the allegation that either Anderson or Hoffman was present at Gillette's arrest. Because no genuine issue of material fact exists with respect to these claims, Gillette's excessive claims against Anderson and Hoffman must be dismissed. <u>Anderson</u>, 477 U.S. at 247–48.

As for the remaining defendants, genuine issues of material fact exists as to Gillette's

excessive force claim against them. It is undisputed that on December 30, 2011, Gillette was intoxicated when he was walking home from the bar. Gillette contends that he was accosted by officers and exchanged words with them. Gillette contends the officers turned him around, shoved him against a vehicle, threw him to the ground, then proceeded to beat him throughout the body with hands, batons, and booted feet. Gillette avers that he did not resist arrest or create a disturbance in the streets.

On the other hand, Cipperly and Parker argue that they found Gillette screaming in the middle of the street. Cipperly and Parker told Gillette to leave but Gillette resisted. The officers proceeded to arrest Gillette and Gillette resisted. McNall and Rockwell also arrived at the scene. Gillette continued to resist arrest. Cipperly struck Gillette in the upper right back with a baton. McNall stepped on Gillette's foot to stop Gillette from kicking. McNall then struck Gillette twice in the buttocks and once in the right lower leg with a baton. Parker brought Gillette to the ground. Rockwell struck Gillette several times in the shoulder with a flashlight and hit Gillette's back of the head in the process.

This too, constitutes competing evidence that rests on the credibility of Gillette on one hand and defendants' on the other. If Gillette's account of the events is credited, the force used by Cipperly, McNall, Parker, and Rockwell would be objectively unreasonable and disproportional to the circumstances confronting those officers. Jones, 465 F.3d at 61. A rational finder of fact could find in favor of Gillette. Gallo, 22 F.3d at 1223–24. Therefore, the excessive force claims against Cipperly, McNall, Parker, and Rockwell remain in this action.

Accordingly, defendants' motion on this ground is granted for claims against Anderson and Hoffman and denied for claims against Cipperly, McNall, Parker, and Rockwell.

38

### G. **Monell** Claims

"Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort." Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658, 691 (1978). "[T]o prevail on a claim against a municipality under section 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." Roe v. City of Waterbury, 542 F.3d 31, 36 (2d Cir. 2008).

"In determining municipal liability, it is necessary to conduct a separate inquiry into whether there exists a 'policy' or 'custom.'" Davis v. City of New York, 228 F. Supp. 2d 327, 336 (S.D.N.Y. 2002), aff'd, 75 F. App'x 827 (2d Cir. 2003). Two situations that constitute a municipal policy are (1) where there is an officially promulgated policy, Monell, 436 U.S. at 690, and (2) a single act taken by a municipal employee who has final policymaking authority in the realm in which the action was taken. Pembaur v. City of Cincinnati, 475 U.S. 469, 480–81 (1986). On the other hand, "an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown, 520 U.S. 397, 404 (1997). The custom must be permanent and well-settled. City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988) (citation omitted). Neither a policy nor a custom can be established based on a single instance of unconstitutional conduct by a municipality employee. See City of Okla. City v. Tuttle, 471 U.S. 808, 831 (1988) (Brennan, J., concurring in part and concurring in the judgment) ("To infer the existence of a city policy

from the isolated misconduct of a single, low-level officer, and then to hold the city liable on the basis of that policy, would amount to permitting precisely the theory of strict <u>respondeat superior</u> liability rejected in <u>Monell</u> . . . ."). "Conclusory allegations of a municipality's pattern or policy of unconstitutional behavior is insufficient to establish a <u>Monell</u> claim." <u>Devarnne v. City of Schenectady</u>, No. 10-CV-1037, 2011 WL 219722, at *3 (N.D.N.Y. Jan. 21, 2011) (quoting <u>McAllister v. New York City Policy Dep't</u>, 49 F. Supp. 2d 688, 705 (S.D.N.Y. 1999)).

Here, assuming there has been a constitutional injury in connection with the remaining claims, plaintiffs have failed to show a dispute of material fact with respect to the existence of a municipal policy causing such an injury. Plaintiffs have provided no allegations or evidence to support an inference that the City of Troy has an official policy of tolerating police abuse. Plaintiffs submit to the Court a General Order of the Troy PD on the use of physical force. However, despite their conclusory statements, plaintiffs do not show how the General Order was deficient and caused them a constitutional injury. <u>Roe</u>, 542 F.3d at 36; <u>Monell</u>, 436 U.S. at 690. Furthermore, plaintiffs' claim that Tedesco possess the final policymaking authority in training officers on the use of physical force remains unsubstantiated. <u>Pembaur</u>, 475 U.S. at 480–81. As such, plaintiffs cannot prove the existence of an unconstitutional official policy for the purposes of his <u>Monell</u> claim. Plaintiffs also failed to raise a question of material fact with respect to the existence of an unconstitutional custom or practice permitted by the City of Troy. Plaintiffs submitted letters authored by Tedesco and Judge Sharpe in an attempt to establish a custom on the use of excessive force during arrests in Troy. However, those letters do not indicate that the alleged custom was so widespread as to have the force of law. <u>Bd. of Cnty. Comm'rs of Bryan Cnty., Okla.</u>, 520 U.S. at 404. In fact, Tedesco's letter shows his own concern for

how investigations in the police department were suspect.  Neither letter is relevant to show that the use of excessive force was a well-settled and permanent custom among Troy police officers.  City of St. Louis, 485 U.S. at 127.  Thus, plaintiffs have failed to show the existence of a policy or custom for their municipality liability claims.

As for theory of the failure to train, a plaintiff must show that such failure "amount[s] to 'deliberate indifference to the rights of persons with whom the untrained employees come into contact."  Connick v. Thompson, – U.S. –, 131 S. Ct. 1350, 1359 (2011) (altercations and citation omitted).  A plaintiff must prove that "a municipal actor disregarded a known or obvious consequence of his action."  Id. at 1360 (internal quotation marks and citation omitted).  Further, "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for the purposes of failure to train."  Id. (internal quotation marks omitted).  Here, plaintiffs do not proffer specific and substantiated arguments involving deficiencies in Troy PD's training programs.  Further, plaintiffs do not proffer any evidence showing how Troy policy-makers were deliberately indifferent to "the risk that [their] employees would unconstitutionally apply [their] policies without more training."  Amnesty Am., 361 F.3d at 129.  Therefore, plaintiffs have failed to establish how any deficiencies in the training programs caused a constitutional violation or that the failure to train was the product of deliberate indifference.  Okin v. Village of Cornwall-On-Hudson Police Dep't, 577 F.3d 415, 440–41 (2d Cir. 2009) (prevailing in a failure to train claim requires "[t]he plaintiff [to] offer evidence to support the conclusion that the training program was inadequate, not that a particular officer may be unsatisfactorily trained or that an otherwise sound program has occasionally been negligently administered, and that a hypothetically well-trained officer would have avoided the constitutional violation."

(internal quotation marks and alterations omitted)).

Given the reasons above and the unsubstantiated nature of plaintiffs' assertions, a reasonable factfinder would not be able to find in plaintiffs' favor and the <u>Monell</u> claims must be dismissed.  Accordingly, defendants' motion on this ground is granted.

### H.  Qualified Immunity

Defendants claims that even if plaintiffs' constitutional claims are substantiated, they are nevertheless entitled to qualified immunity.  Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982); <u>Aiken v. Nixon</u>, 236 F. Supp. 2d 211, 229–30 (N.D.N.Y. 2002) (McAvoy, J.), <u>aff'd</u>, 80 F. App'x 146 (2d Cir. 2003).  However, even if the constitutional privileges "are so clearly defined that a reasonable public official would know that his actions might violate those rights, qualified . . . immunity might still be available . . . if it was objectively reasonable for the public official to believe that his acts did not violate those rights."  <u>Kaminsky v. Rosenblum</u>, 929 F.2d 922, 925 (2d Cir. 1991); <u>Magnotti v. Kuntz</u>, 918 F.2d 364, 367 (2d Cir. 1990) (internal citations omitted)).  A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation.  <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001).  Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights were clearly established at the time of the alleged violation.  <u>Aiken</u>, 236 F. Supp. 2d at 230.

It is well settled that between August 29, 2010 and May 8, 2011, the Fourth Amendment protected an individual's right against the use of excessive force.  <u>Graham v. Connor</u>, 490

U.S. 386, 395 (1989). Thus, accepting all of plaintiffs' allegations as true, qualified immunity cannot be granted to defendants for the alleged Fourth Amendment violations. Accordingly, defendants' motion on this ground is denied.

However, were § 240.20(6) to have been found unconstitutional, defendants would be entitled to qualified immunity. No court, federal or state, has yet declared New York Penal Law § 240.20(6) to be unconstitutional. As such, it cannot be said that the defendants' conduct violated clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow, 457 U.S. at 818; Aiken, 236 F. Supp. 2d at 229–30. In fact, it would not be objectively reasonable for a Troy PD officer to believe that enforcing § 240.20(6) would violate an arrestee's constitutional rights. Kaminsky, 929 F.2d at 925. This is because, as discussed supra, New York courts have held that the statue is constitutional. People v. Tichenor, 89 N.Y.2d 769, 774.

Accordingly, defendants' motion on this ground is granted only as to the constitutional challenge.

## I. State Law Claims

Defendants argue that any state law claims arising out of Lluberes's May 8, 2011 arrest should be dismissed for failure to comply with conditions precedent to suit pursuant to New York law. See Mohr v. City of New York, No. 12-CV-163 (LGS), 2013 WL 5988948, at *10 (S.D.N.Y. Nov. 12, 2013) (citing New York Gen. Mun. Law §§ 50-e and 50-i). However, "[t]he Notice of Claim requirements do not apply to claims asserted against municipal employees in their individual capacities that allege injuries resulting from intentional wrongdoing or recklessness-misconduct for which the City has no obligation to indemnify."

43

Matthews v. City of New York, 889 F. Supp. 2d 418, 448 n.12 (E.D.N.Y. 2012) (quoting

Brenner v. Heavener, 492 F. Supp. 2d 399, 405 (S.D.N.Y. 2007) (internal quotation marks

omitted)). Here, because plaintiffs' false arrest and imprisonment claims involved conduct

by the individual defendants that occurred while they are acting within the scope of their

public duties, the City of Troy would have a statutory obligation to indemnify the officers and

must receive a notice of claim. Brenner, 492 F. Supp. 2d at 404 (citations omitted).

However, plaintiffs remaining state law claims are intentional torts against the individual

defendants for which the City of Troy has no obligation to indemnify. Id. at 405. Thus, the

notice of claim requirements do not apply to the assault and battery and excessive force

claims.

Accordingly, defendants' motion on this ground is granted as to the false arrest and

imprisonment claims but denied as to the assault and battery and excessive force claims.


### III. New York FOIL

Defendants argue that plaintiffs' FOIL claims cannot stand because FOIL does not

provide a private cause of action.[14]

Under New York FOIL, "[e]ach agency shall . . . make available for public inspection and

copying all records, except that such agency may deny access to records or portions

thereof that [fall within an enumerated exception]." N.Y. PUB. OFF. LAW § 87(2). An agency

---

[14] Defendants argue that plaintiffs lack standing to bring these claims and
defendants Pirro and Sarris cannot be held liable for the alleged FOIL violations. Defs.'
Mem. of Law (Dkt. No. 60-7) at 11–12. Defendants further seek to sever the FOIL claims
and the constitutional challenge to Penal Law § 240.20(6) from this action. Defs.' Mem. of
Law (Dkt. No. 60-7) at 13–14. Because the FOIL claims are dismissed for reasons stated
herein, defendants' remaining arguments are rendered moot.

has five business days of the receipt of a written FOIL request for record to "make such record available to the person requesting it, deny such request in writing or furnish a written acknowledgment of the receipt of such request and a statement of the approximate date . . . when such request will be granted or denied." Id. § 89(3)(a). "[A]ny person denied access to a record may within thirty days appeal in writing such denial to the head, chief executive or governing body of the entity . . . who shall within ten business days of the receipt of such appeal fully explain in writing to the person requesting the record the reasons for further denial, or provide access to the record sought." Id. § 89(4)(a).

When a state agency denies an administrative appeal, the plaintiff may challenge that denial by bringing an Article 78 proceeding under New York Civil Practice Law and Rules. N.Y. PUB. OFF. LAW § 89(4)(b); Schuloff v. Fields, 950 F. Supp. 66, 67–68 (E.D.N.Y. 1997) ("The appropriate vehicle for challenging denials of access guaranteed by the New York [FOIL] is a state court proceeding pursuant to N.Y.C.P.L.R. Article 78 upon exhaustion of administrative remedies.") (citations omitted); see also Jenn-Ching Luo v. Baldwin Union Free Sch. Dist., No. 12-CV-6054 (JS)(AKT), 2013 WL 4719090, at *4 (E.D.N.Y. Sept. 3, 2013) (collecting cases); Yip v. Bd. of Trustees of State Univ. of New York, No. 03-CV-00959C(SR), 2004 WL 2202594, at *7 (W.D.N.Y. Sept. 29, 2004), aff'd 150 F. App'x 21 (2d Cir. 2005) (citing N.Y. PUB. OFF. LAW § 89(4)(b)); Sank v. City University of New York, No. 94-CV-0253 (RWS), 2002 WL 523282, at *9 (S.D.N.Y. Apr. 5, 2002).

Here, this Court lacks jurisdiction to determine whether defendants violated a state law guaranteeing the public access to official records. Schuloff, 950 F. Supp. at 67. Plaintiffs claim they may seek damages, attorney's fees, and costs of litigation against defendants Pirro, Sarris, and the City of Troy, contending that defendants violated their rights under

45

FOIL. Compl. at 32; Pl.'s Mem. of Law (Dkt. No. 62-3) at 18–23. Contrary to plaintiffs'

assertion, New York FOIL does not give rise to a private cause of action to recover money

damages. Jenn-Ching Luo, 2013 WL 4719090, at *3; Yip, 2004 WL 2202594, at *7

(citations omitted); Sank, 2002 WL 523282, at *9 (citing Warburton v. State, 173 Misc. 2d

879, 881–82 (N.Y. Ct. Cl. 1997)). The appropriate vehicle for plaintiffs to pursue their FOIL

requests is to commence an Article 78 proceeding. This Court does not have jurisdiction

over an Article 78 proceeding. Yip, 2004 WL 2202594, at *7. Thus, plaintiffs' FOIL claim

must be dismissed from this action for lack of subject matter jurisdiction and failure to state

a claim upon which relief can be granted.

Accordingly, plaintiffs' motion on this ground is denied.


## IV. Severance and Bifurcation

Defendants' request to either sever or bifurcate the claims of Lluberes and Gillette

implicates Fed. R. Civ. P. 21 and 42.

Rule 21 of the Federal Rules of Civil Procedures governs "misjoinder and nonjoinder of

parties" and provides in part, "[o]n motion or on its own, the court may at any time, on just

terms, add or drop a party. The court may also sever any claim against a party." FED. R.

CIV. P. 21. Under Rule 42(b), "[f]or convenience, to avoid prejudice, or to expedite and

economize, the court may order a separate trial of one or more separate issues [or] claims .

. . ." FED. R. CIV. P. 42(b). "The distinction between these two rules is that separate trials

usually will result in one judgment, but severed claims become entirely independent actions

to be tried, and judgment entered thereon, independently." Gonzalez v. City of

Schenectady, No. 00-CV-0824, 2001 WL 1217224, at *10 (N.D.N.Y. Sept. 17, 2001) (citing

9 Charles A. Wright & Arthur R. Miller, FED. PRACTICE AND PROCEDURE: CIVIL 2D § 2387) (internal quotation marks and altercations omitted).

The Second Circuit has accorded trial courts broad discretion to employ either of these rules, which are determined using the same standard. New York v. Hendrickson Bros., Inc., 840 F.2d 1065, 1082 (2d Cir.), cert. denied, 488 U.S. 848 (1988) (citations omitted). In exercising such discretion, the court must consider: "(1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims."[15] Gonzalez, 2001 WL 1217224, at *10 (citation omitted). In order to grant a severance of separate trials, only one of these conditions ought to be met. Lewis v. Triborough Bridge, No. 97-CV-0607, 2000 WL 423517, at *2 (S.D.N.Y. Apr. 19, 2000) (severance); Carson v. City of Syracuse, No. 92-CV-777, 1993 WL 260676, at *2 (N.D.N.Y. July 7, 1993) (bifurcation).

Defendants seek severance or a bifurcated trial for the claims of Lluberes and Gillette

---

[15] Other courts have employed the following test:

> (1) whether the issues sought to be tried separately are significantly different from one another; (2) whether the severable issues require the testimony of different witnesses and different documentary proof; (3) whether the party opposing the severance will be prejudiced if it is granted; and (4) whether the party requesting the severance will be prejudiced if it is not granted.

Jeanty v. Cnty. of Orange, 379 F. Supp. 2d 533, 548–49 (2005) (citation omitted); Lewis v. Triborough Bridge, No. 97-CV-0607, 2000 WL 423517, at *2 (S.D.N.Y. Apr. 19, 2000).

because they are based on unrelated incidents and defendants would be prejudiced by having to defend two distinct excessive force and false arrest claims in one trial. Defs.' Mem. of Law at 14–15. Defendants fear that each plaintiff will improperly bolster his case by the mere presence of each others' claims involving some of the same officers, namely Cipperly and McNall. Id. at 14. Further, defendants assert that moving forward in one trial as one action will not facilitate judicial economy. Id. at 15.

In this case, severance is appropriate. Each plaintiff's claims arise from separate occurrences. For the most part, those occurrences involve separate individual defendants. Further, each plaintiff's claims do not arise from a common nucleus of operative facts. It also appears that the overlap of witness and documentary proof is minimal. Furthermore, defendants are correct to contend that they may be prejudiced by each plaintiff bolstering his case due to the presence of each others' claims involving some of the same officers. Moreover, defendants are also prejudiced by having to defend two distinct excessive force claims in one trial. This prejudice is not outweighed by the facilitation of judicial economy that would be served from trying all claims in one trial. Defendants have clearly met at least one consideration for severance of the claims. Lewis, 2000 WL 423517, at *2.

Accordingly, defendants' motion on severing plaintiffs' claims is granted.


### V. Counterclaim

Plaintiffs move for sanctions against defendants seeking to strike defendants' counterclaim and preclusion of certain evidence for defendants' failure to comply with a court order (Dkt. No. 53) to submit to plaintiffs (1) a computation of fees sought in connection with the counterclaim and (2) an insurance policy. Pls.' Mem. of Law at 23–24.

48

Pursuant to the Federal Rules of Civil Procedure, sanctions may be awarded where parties fail to comply with court orders or fail to attend their own depositions.  FED. R. CIV. P. 37(b) & (d); N.D.N.Y.L.R. 1.1(d) ("Failure of an attorney or of a party to comply with . . . Orders of the court, or the Federal Rules of Civil . . . Procedure shall be a ground for imposition of sanctions.").  Such sanctions include:  (1) an order establishing facts; (2) an order precluding evidence, issues or claims; (3) an order striking a pleading; (4) staying proceedings; (5) dismissing the action; or (6) rendering a default judgment against the disobedient party.  FED. R. CIV. P. 37(b)(2)(A)(i-vi) & (d)(3).

A district court has broad discretion to impose sanctions.  Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 107 (2d Cir. 2002) (citation omitted).  "[C]ompliance with discovery orders, is necessary to the integrity of our judicial process . . . part[ies] who flout[] such orders do so at [their] peril."  Update Art, Inc. v. Modiin Pub., Ltd., 843 F.2d 67, 71 (2d Cir. 1988).  In deciding an appropriate sanction, "the court may consider the full record . . . [specifically] the willfulness of the non-compliant party; the reasons for the noncompliance; the efficacy of lesser sanctions; the duration of the non-compliance; and whether the party has been warned of the consequences of non-compliance."  Broadcast Music, Inc. v. Metro Lounge & Café LLC, No. 10-CV-1149 (NAM/ATB), 2012 WL 4107807, at *2 (N.D.N.Y. July 18, 2012) (citations omitted); see also Bambu Sales, Inc. v. Ozak Trading Inc., 58 F.3d 849, 852–54 (2d Cir. 1995).  The goals of sanctions are to "ensure that a party will not benefit from its own failure to comply . . . [, act as] specific deterrents and seek to obtain compliance with the particular order issued[, and] . . . serve [as] a general deterrent on the case at hand and on other litigation . . . ."  Update Art, Inc., 843 F.2d at 71 (citations omitted).

49

Here, defendants' actions do not warrant the imposition of sanctions.  A review of the record shows that in defendants' opposition papers to plaintiffs' motion to compel, defendants had represented that they did not allege a counterclaim seeking damages but rather the ability to recover reasonable attorney's fees if they prevail in this action and that no defendant had an insurance agreement that may satisfy any part of a judgment.  Dkt. Nos. 50 (motion to compel), 51 (affidavit in opposition).  A hearing on the motions was held on October 17, 2013 and defendants were ordered, in part, to provide plaintiffs with a computation of attorney's fees incurred by December 20, 2013 and a copy of an insurance agreement for Sarris's malpractice insurance carrier.  Dkt. No. 53.  Despite the Court's order, defendants failed to provide the computation by December 20, 2013.  Defendants' counsel explains that the failure was due to his own oversight and neglect then points to Sarris's deposition in which he testified that no such insurance policy exists.  Defs.' Resp. (Dkt. No. 66-3) at 9; Dkt. No. 66-1 (computation of attorney's fees); Sarris Dep. (Dkt. No. 60-6 at 86–141) at 96–97.[16]

A review of the record indicates to the Court that defendants have substantially complied with the Court's order.  Dkt. No. 53.  The failure to provide the computation, which was made available on the docket on March 3, 2014, was the result of defense counsel's oversight and neglect.  Dkt. No. 66-1.  Defendants' counsel also represented to the Court that he sent the relevant documents to plaintiffs' counsel on February 10, 2014.  Casey Aff. (Dkt. No. 66) ¶ 5.  The Court does not find defendants' conduct to be so egregious as to

---

[16]  Sarris testified, "[t]he City of Troy covered me, but I had no coverage with respect to any policies in my private practice.  But I was covered, as well all the other employees in the City of Troy."  Sarris Dep. at 96.

warrant sanctions.

Accordingly, plaintiffs' motion on this ground is denied.

## VI.  John and Jane Doe Defendants

Defendants argue that dismissal of John and Jane Doe defendants is warranted due to plaintiffs' failure to prosecute.

Federal Rule of Civil Procedure 41(b) provides that a court may dismiss an action "[i]f the plaintiff fails to prosecute or comply with [the Federal Rules of Civil Procedures] or a court order . . . ."  FED. R. CIV. P. 41(b); see Link v. Wabash R.R. Co., 370 U.S. 626, 629 (1962); MTV Networks v. Lane, 998 F. Supp. 390, 393 (S.D.N.Y. 1998); see also N.D.N.Y.L.R. 41.2(b).  The Second Circuit has held that it is within the province of the trial judge's sound discretion to dismiss for want to prosecution.  Staley v. Mika, No. 08-CV-0305 (GTS/RFT), 2010 WL 3907824, at *9 n.27 (N.D.N.Y. Sept. 29, 2010) (citing Merker v. Rice, 649 F.2d 171, 173 (2d Cir. 1981)).

Since a Rule 41(b) dismissal is a "harsh remedy . . . [it] is appropriate only in extreme situations."  Lucas v. Miles, 84 F.3d 532, 535 (2d Cir. 1996) (citations omitted).  To determine whether dismissal for failure to prosecute is appropriate, courts should consider:

> (1) the duration of plaintiff's failure to comply with the court order, (2) whether the plaintiff was on notice that failure to comply would result in dismissal, (3) whether the defendant[] is likely to be prejudiced by further delay . . . (4) a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard, and (5) whether the judge has adequately considered a sanction less drastic than dismissal.

Lucas, 84 F.3d at 535; see also Lewis v. Rawson, 564 F.3d 569, 576 (2d Cir. 2009)

(citations omitted).

Here, the factors weigh in favor of dismissal of the John and Jane Doe defendants. A review of this case's procedural history shows that twenty-one months have passed since the expiration of the motion-to-amend deadline on June 1, 2012. Dkt. No. 14 (Uniform Pretrial Scheduling Order); Ruzsa v. Rubenstein & Sendy Attys at Law, 520 F.3d 176, 177 (2d Cir. 2008) (per curiam) (dismissing action, in part, due to plaintiff's seven-months of inaction). Plaintiffs, who are represented by counsel, received adequate notice through General Order #25, federal statutes and the local rules of this District, that the failure to name and serve John and Jane Doe defendants would result in such dismissal. Dkt. No. 2; Fed. R. Civ. P. 4(m), 41(b); N.D.N.Y.L.R. 4.1(a),(b), 5.1(f), and 41.2(a).[17] The John and Jane Doe defendants have never been served or conducted discovery. No doubt, they are prejudiced by further delay. Dkt. No. 65. Plaintiffs contend that they intend to depose five additional individuals who may lead to the identification of John and Jane Doe defendants. Pl.'s Resp. (Dkt. No. 68-3) at 11. This does not do away the prejudice against the John and Jane Doe defendants that is so evidently present. As such, there is no lesser sanction other than dismissal that would not jeopardize the Court's legitimate interest in managing a congested docket with efficiency. Lucas, 84 F.3d at 535.

In the alternative, plaintiffs' claims against the John and Jane Doe defendants should be dismissed pursuant to Fed .R. Civ. P. 4(m). Where a defendant has not been served with

_____

[17] This District's local rules direct that: (1) service of process must be made within sixty days of the filing of the complaint and in a manner specified in the Federal Rules of Civil Procedure, N.D.N.Y.L.R. 4.1(a)(b); (2) a civil complaint submitted to the Clerk for filing must be accompanied by a summons to be served on each of named defendant, id. 5.1(f); and (3) in the absence of an order setting any pretrial proceeding or for trial four months of inactivity constitutes presumptive evidence of lack of prosecution, id. 41.2(a).

process within 120 days of the filing of the complaint, the complaint must be dismissed without prejudice as to that defendant or the court must order "service be made within a specified time." FED. R. CIV. P. 4(m).  Here, more than 120 days have passed since plaintiffs filed their complaint on November 14, 2011.  Plaintiffs have not identified, locate, and serve any of the John and Jane Doe defendants after the close of the discovery period, which was January 9, 2014.  Dkt. No. 58.  As such, any and all claims alleged against said defendants are dismissed from this action.

Accordingly, defendants' motion on this ground is granted.


## VII. Conclusion

For the reasons stated above, it is hereby:

1. **ORDERED** that plaintiffs' motion for summary judgment (Dkt No. 62) is **DENIED** in its entirety; it is further

2. **ORDERED** that defendants' motion for summary judgment (Dkt No. 60) is:

    A.    **GRANTED** as to (1) the constitutional challenge to § 240.20(6); (2) personal involvement defense for Anderson, Castle, and Hoffman; (3) Lluberes's false arrest and imprisonment claims; (4) <u>Monell</u> claims; (5) state torts of false arrest and imprisonment concerning Lluberes's second arrest; (6) NY FOIL claims; (7) severance of the claims; and (8) John and Jane Doe defendants; and

    B.    **DENIED** as to (1) personal involvement defense for Tedesco; (2) Gillette's false arrest and imprisonment claims; (3) plaintiffs' excessive force claims; (4) qualified immunity for the Fourth Amendment claims; (5) state torts of assault

and battery and excessive force concerning Lluberes's second arrest; and it is further

3. **ORDERED** that all claims against Anderson, Castle, Dean, Hoffman, Pirro, Negron Evangelista, Salvatore, Sarris, Tutunjian, Troy PD, John and Jane Doe defendants, and individual defendants in their official capacities be dismissed from this action.

4. **ORDERED** that Gillette's trial will proceed as scheduled on April 28, 2014 at 9:30 a.m.  Upon the conclusion of that trial, the Court will set a date for Lluberes's trial.


It is so ordered

Dated:  March 21, 2014
         Albany, New York

Christian F. Hummel
U.S. Magistrate Judge